Minute Order Form:(06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3556 | **DATE** | 5/9/2003 |
| **CASE TITLE** | Stanley Taylor vs. Kenneth Apfel | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: Plaintiff's motion for summary judgment [8-1] is granted in part and denied in part.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAY 13 2003 date docketed | |
| ✓ | Docketing to mail notices. | docketing deputy initials | 23 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| TSA | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STANLEY TAYLOR, ) | |
| ) | |
| Appellant-Plaintiff, ) | |
| ) | |
| v. ) No. 00 C 3556 | |
| ) | |
| KENNETH APFEL, Commissioner of ) Wayne R. Andersen | |
| Social Security, ) District Judge | |
| ) | |
| Appellee-Defendant. ) | |

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the cross motions for summary judgment filed by Plaintiff Stanley Taylor and Defendant Kenneth Apfel, Commissioner of Social Security. For the reasons stated below, plaintiff's motion is granted in part and denied in part and defendant's motion is denied.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI") on February 1, 1988, alleging that he became disabled on August 3, 1984, due to "bad feet, back problems and enlarged sinuses." The application was denied initially. However, on July 19, 1991, Administrative Law Judge (ALJ) Richard Sprague found that plaintiff had the following severe impairments: alcohol addiction, depression and organic brain syndrome. He found that plaintiff's alcoholism and depression met the requirements of Section 12.04 of the Listings of Impairments (Listings), 20 C.F.R. Part 404, Subpart P, Appendix 1 (1991) and entitled him to disability benefits. Accordingly, the ALJ found that plaintiff had been under a disability since February 1, 1988 and further found that alcoholism and/or drug addiction was a contributing

23

factor material to the determination of disability. The ALJ recommended that plaintiff undergo treatment and that his compliance with treatment be monitored.

On March 29, 1996, Public Law 104-121 was enacted. Public Law 104-121 precludes an award of Disability Insurance Benefits under Title II or SSI under Title XVI of the Social Security Act, "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub.L. 104-121 § 105(a), 105(b).

After Public Law 104-121 was passed, the Social Security Administration informed Mr. Taylor that his benefits would cease on January 1, 1997, the effective date of the Act, since alcoholism was found to be a contributing factor material to the finding of disability. Plaintiff then filed an appeal of the decision. A disability hearing officer determined on reconsideration that alcoholism was a contributing factor material to the finding of plaintiff's disability and that his benefits would cease on January 1, 1997. Plaintiff then filed a request for a hearing.

Plaintiff's first administrative hearing concerning the termination of his benefits was scheduled for April 7, 1997. Plaintiff appeared without an attorney and complained that he had a back impairment. ALJ Carlton Bailey, Jr. supplied plaintiff with a list of attorneys, rescheduled the hearing for June 5, 1997 and ordered a consultative examination with an internist. On June 5, 1997 plaintiff again appeared without an attorney. When asked if he had tried to get an attorney for this hearing, plaintiff responded that he had not tried, but that he needed one. The ALJ referred plaintiff again to the list of attorneys and suggested that since he was downtown, he could talk to people at Kent College of Law, the Chicago Bar Association, or the Legal Assistance Foundation to find an attorney. Plaintiff stated that he would find an attorney that day.

Plaintiff appeared for his hearing on November 26, 1997 without counsel. He stated that

" they told me they wouldn't be here. They couldn't make it today." Plaintiff said the Legal Aid lawyer had told him to ask for a continuance, but Taylor could not produce the name of the lawyer. At this point the ALJ proceeded with the hearing, and plaintiff was not represented by counsel at the hearing.

Plaintiff's testimony revealed that he was 50 years old and had graduated from high school. He last worked doing maintenance and cleaning at a factory in 1985 and had not worked since 1985 except for "odd jobs" such as painting. When asked whether he could read, plaintiff replied "pretty good." However, at a different point in the hearing, the ALJ asked plaintiff whether he had some difficulty in reading, to which he responded, "yes." Plaintiff further stated that he had no difficulty making change when he went to the store. Plaintiff's daily activities began at about 6:00 or 7:00 in the morning. He cares for his personal needs and does chores around the apartment. Although he claims that he is incapable of cooking, he sometimes shops for groceries with his brother. He walks for exercise, watches television and takes public transportation.

Plaintiff testified that he was "not really" still drinking, although he had a beer with his brother the night before. When questioned about his various physical complaints, he stated that he last had a seizure one week earlier, and that it was characterized by weakness in his legs, falling down and shaking. He complained of "bad feet" due to an episode of frostbite, discomfort in his "backside," spinal pain, breathing problems and enlarged sinuses. He nevertheless admitted that these problems did not prevent him from working. He stated that he took Nitroglycerin to relieve chest pain. Plaintiff claims that he has problems with his memory, concentration, sleep, appetite disturbances, low energy and depression.

Dr. Irving Zitman, an internal medicine specialist, testified as a medical expert at the November 1997 hearing. After extensive testing, Dr. Zitman attributed plaintiff's seizures to alcohol withdrawal. The doctor stated that, at the time, the plaintiff had "extensive and severe alcoholism." When the ALJ asked about plaintiff's claim of enlarged sinuses, the doctor stated that there was no evidence of this condition in the record. He opined that plaintiff's scoliosis was not an impairment unless it was associated with musculoskeletal or pulmonary disturbances, and none were present. Dr. Zitman concluded that plaintiff did not meet or equal any of the Medical Vocational Guideline Listings.

Psychiatrist, Dr. Gerson Kaplan also testified at the November 1997 administrative hearing. He testified that plaintiff had a history of alcoholism "going back many, many years." Noting plaintiff's testimony that he had reduced his drinking and currently drank very little, Dr. Kaplan stated that "other than his alcoholism, I don't see any significant psychological or mental problem." The doctor further stated that he was unaware of any work-related activities the plaintiff was unable to perform.

Grace Gianforte testified as a vocational expert at the November 1997 administrative hearing. When asked about the plaintiff's educational level, Ms. Gianforte stated that psychological testing indicated that plaintiff's reading level might be below sixth grade. The vocational expert stated that there might be illiteracy and that the tests of record did not establish plaintiff's reading level. The ALJ then asked the vocational expert whether plaintiff could work in the economy. Taking into account plaintiff's age, education and work experience, a Residual Functional Capacity ("RFC") for light work that was not performed at heights or around moving machinery, marked changes of temperature or humidity, dust, fumes or gas; did not involve

climbing; and involved only occasional bending, squatting and crawling, the vocational expert stated that plaintiff could perform the following "simple, repetitive, short type of work: approximately 1,510 jobs as a packer; 10,000 jobs as an assembler; and 800 jobs as a painting and decorating hand in the Chicago metropolitan area."

On January 12, 1998, ALJ Bailey found that, under the legislation enacted in March 1996, disability could not be found if substance abuse was a contributing factor material to disability. The ALJ further found that, because plaintiff's alcoholism had been a contributing factor material to his disability in 1991, his disability on the basis of substance abuse necessarily ceased as of January 1, 1997, the effective date of the legislation. The ALJ found that plaintiff's severe impairments included: severe seizures due to alcoholism; alcohol abuse in early remission and back pain that did not, alone or in combination, meet or equal a condition set forth in the Listing of Impairments (Listings), 20 C.F.R. Part 404, Subpart P, Appendix 1 (1988). The ALJ found that plaintiff had the residual functional capacity (RFC) to perform light work and that plaintiff would not be disabled if he stopped using alcohol. Plaintiff had no past relevant work. However, he retained the ability to perform a significant number of jobs in the national economy and was, therefore, not disabled.

The Appeals Council denied plaintiff's request for further review, making the ALJ's decision the final decision of the Commissioner. Thereafter, plaintiff filed suit in this Court pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

We review the ALJ's findings to determine if they are "supported by substantial evidence." *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971); *Powers v. Apfel*, 207 F.3d 431,

434 (7th Cir. 2000). Substantial evidence, although more than a mere scintilla of proof, is "no more than such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Although we review "the entire record to determine if there is relevant evidence adequate to support the ALJ's conclusion, we do not decide the facts anew, reweigh evidence, or substitute our judgment for that of the ALJ." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001).

## ANALYSIS

### I. Plaintiff Did Not Validly Waive His Right To A Lawyer

A claimant has a statutory right to counsel at a disability hearing. 42 U.S.C. § 406, 20 C.F.R. 404.1700. If properly informed of the right, the claimant may waive it. *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991); *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1991). To ensure a valid waiver of counsel, the ALJ must explain to the *pro se* claimant: (1) the manner in which an attorney can aid in the proceedings; (2) the possibility of free counsel or a contingency arrangement; and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees. *Binion*, 13 F.3d at 245.

In this case, plaintiff appeared for his hearing on three occasions without an attorney. The first two times, the ALJ continued the hearing so that the plaintiff could find a lawyer. On the third occasion, the ALJ asked plaintiff if he had tried to obtain an attorney, and plaintiff answered in the affirmative. Plaintiff stated that he had talked to Legal Aid and that they told him to ask for a continuance because they could not appear on the date of the hearing. Plaintiff could not remember the attorney's name. The ALJ then stated: "well, then I assume, sir, that you're ready to proceed today then . . . we'd have to have something in writing not to continue."

6

The record does not establish that plaintiff had been previously informed if he did not appear with an attorney, he would have to bring a written note of explanation. Moreover, the ALJ did not ask plaintiff if he wished to waive the right to counsel. From the record, it does not appear that the ALJ advised plaintiff as to the manner in which an attorney could aid in the proceedings or that there is a limitation on attorney fees to 25 percent of the past due benefits and that the court is required to approve the fees.

Plaintiff argues that the decision of the ALJ must be remanded because the ALJ did not secure a valid waiver of counsel before he conducted the hearing without an attorney present. We find, and the defense concedes, that the ALJ did not secure a valid waiver of right to counsel because he did not explain to the *pro se* plaintiff explicitly the manner in which an attorney can aid in the proceedings, or a contingency arrangement, and the limitation on attorney fees and required court approval of the fees. However, defendant contends that remand is not mandatory because the ALJ fully developed the record. *See Binion v. Shalala,* 13 F.3d 243, 245 (7th Cir. 1991).

If a plaintiff's waiver of his right to counsel is invalid, the ALJ has a heightened duty to develop a full and fair record. In *Vaile v. Chater*, 916 F. Supp. 821, 829 (N.D. Ill. 1996), the court held: "[t]he ALJ's duty to develop the record fully and fairly where the claimant proceeds without counsel is met if the ALJ probes the claimant for possible disabilities and uncovers all of the relevant evidence. . . . Where the disability benefits claimant is unassisted by counsel, the ALJ has a duty 'scrupulously and conscientiously [to] probe into, inquire of and explore for all of the relevant facts.'" *Valie,* 916 F. Supp. at 829. Failure by an ALJ to fulfill this special duty constitutes good cause to remand for gathering of additional evidence. *Thompson,* 933 F.2d at

7

585. When the ALJ fails to obtain a valid waiver, "the burden is on the Commissioner to show that the ALJ adequately developed the record." *Vaile*, 916 F. Supp. at 829.

In this case, we find that the record was not developed fully and fairly in regard to the issues of literacy and disabling impairments. The ALJ had the duty to "scrupulously" probe into the question of plaintiff's literacy. In addition, he had a duty to probe into questions concerning possible impairments from which Mr. Taylor may suffer.

For example, the ALJ did not scrupulously or conscientiously probe into the issue of psychological impairments, although there was some evidence in the record of psychological problems. In one very brief exchange the ALJ questioned Mr. Taylor about some of these matters:

| ALJ: | You have any problems with your memory? | ST: | Sometimes. |
| ALJ: | Any problems concentrating? | ST: | Sometimes. |
| ALJ: | Any hallucinations? | ST: | No, sir. |
| ALJ: | Sleep difficulties? | ST: | Yes, sir. |
| ALJ: | Appetite disturbances? | ST: | Yes, sir. |
| ALJ: | Low energy? | ST: | Yes, sir. |
| ALJ: | Depression? | ST: | Yes, sir. |
| ALJ: | Any suicide or homicide ideas? | ST: | No, sir. |

(R. At 442.) The ALJ failed to inquire further into any of these areas.

For these reasons, we find that the ALJ did not secure a valid waiver of attorney from the plaintiff in order to proceed with the hearing without an attorney present. Moreover, we find that the ALJ failed to fully and fairly develop the record as to literacy issues (as will be explained below) and other disabling impairments. Thus, a remand of this case is in order.

II. Literacy Findings

Plaintiff argues that he is illiterate and therefore should be found disabled under Medical Vocational Rule 202.09 ("Rule 202.09"). Medical Vocational Rule 202.09 applies to claimants who are closely approaching advanced age *(50-54)*, with either no relevant work history, or a history of unskilled work only, who are either illiterate or unable to communicate in English. *Rule 202.09 of Appendix 2 of the Medical Vocational Guidelines.* If these conditions are met, a decision of "disabled" is mandated.

In this case, however, the ALJ found that Rule 202.10 should be applied to the plaintiff because he was "at least able to communicate in English." Rule 202.10 applies to claimants who are closely approaching advanced age (50-54), with a limited or lower educational level (at least literate and able to communicate in English) with either no relevant work history, or a history of unskilled work only. *Rule 202.10 of Appendix 2 of the Medical Vocational Guidelines.*

In this case, plaintiff argues that, because he is illiterate, Rule 202.09 should be applied instead of Rule 202.10. We find that this issue should be revisited on remand because there was no explicit finding made on the issue of literacy. The vocational expert, Ms. Gianforte, testified that plaintiff is functionally illiterate. The ALJ found that plaintiff "may even be borderline illiterate" and then found that plaintiff can "at the very least" communicate in English. If plaintiff is illiterate, or "functionally illiterate" as the VE testified or cannot communicate in English, then Rule 202.09 applies, and the ALJ was mandated to find plaintiff disabled.

The ALJ has the duty of developing a complete record (especially in light of plaintiff having no legal counsel representing him). The ALJ could have explored the issue of literacy further with the plaintiff. Because the ALJ made no express finding as to plaintiff's literacy, we

9

cannot determine which Medical Vocational Rule should have been used. Therefore, on remand, the ALJ should make an express finding as to plaintiff's literacy and as to whether he "can communicate in English." Then, depending on the finding, the ALJ should apply the appropriate Medical Vocational Rule to determine whether plaintiff is disabled.

In sum, the facts of this case require that it be remanded because plaintiff did not validly waive his right to a lawyer and the record was not fully and fairly developed. The technical admonitions required by the *Binion* test to proceed without an attorney were not fulfilled. Plaintiff has a statutory right to counsel and remand is required when the ALJ fails to ensure a proper waiver of attorney. Moreover, plaintiff's disability status may turn on whether he is literate. The ALJ made no express finding that plaintiff was literate, and there is insufficient evidence in the record to determine whether or not he is literate. Therefore we remand plaintiff's case to the ALJ for an adequate development of the entire record and for findings as to whether plaintiff is literate and whether plaintiff has any other disabling ailments.

## CONCLUSION

For the foregoing reasons, we grant in part and deny in part plaintiff's motion for summary judgment. We deny defendant's motion for summary judgment. This case is hereby remanded to the Administrative Law Judge for an adequate development of the entire record. Plaintiff should either have counsel present at the hearing, or the ALJ should follow the technical admonitions required by the *Binion* test to ensure a proper waiver of attorney so that plaintiff

may proceed without an attorney. In addition, the ALJ should make an express finding on whether plaintiff is literate and whether he has any other disabling impairment.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: May 9, 2003